Alexander Del Giorno, J.
This is a claim for personal injuries sustained by claimant as a result of the alleged negligence of the State.
The accident occurred at Auburn State Prison, of which claimant was an inmate, on or about the 13th day of September, 1954. At the time of the occurrence of the accident, he was operating an embossing press machine used by the State of New York in the manufacture, processing and punching out of New York State auto registration plates.
The testimony indicates that the claimant was a fast and competent worker at the machine, and that the machine used at the prison was under the supervision of a State foreman competent to supervise, maintain and repair said machine.
The machine on which claimant worked was known as Machine No. 39. This was a heavy die press in the front of which was a heavy metal gate intended to protect the operator. The machine operates as follows: first, the operator pulls the handle in the middle of the gate, whereupon the gates rises automatically. The gate closes the machine, thus protecting the operator. This gate is above the base of the machine, where plates are inserted. When a plate is inserted, the die and the gate are up. Then, by the pulling of a handle, the gate and the die come down and stamp the plate. When the plate is stamped, the die and gate are released and go up again ready for the next operation. Claimant, in operating the machine, was assisted by two other men who passed the plates to him.
Claimant had operated this machine safely for three months. He testified that twice during the operation on the day in question the die and the gate came down automatically without the handle on the left being released by the claimant. All the witnesses agreed that such an event signified defective operation.
*933 Claimant testified further that he reported such defective operation to Mr. Hyland, the Industrial Foreman in the shop, who then came to test the machine. Mr. Hyland insisted that it was working properly and ordered the claimant to continue working. The claimant recommenced operation, and had the die and the gate opened. He then began stamping plates again. When the plate was stamped he pulled the lever which raised the die. He reached for the stamped plate and while doing so the plate came down upon his hand. He tried to pull his hand away, but part of the first finger on his left hand was broken off by the heavy press. He was in the hospital for 10 or 12 days. The distal phalanx of the first finger of the left hand was amputated. His finger and hand hurt him and were sore for some time thereafter. He is now a bartender and states that the hand and the remaining part of the finger hurt slightly when he works and that in cold weather he feels a sensation in the remainder of his finger.
Mr. Hyland, testifying for the State, said that the machine was working well and that claimant did not complain to him of the defective machine. He stated that after the accident he operated the press one hundred times in order to determine its efficiency, which he claimed was his custom whenever anything happened to the machine. He found nothing wrong with it. He did admit that he did not see the accident and that the claimant was taken to the hospital before his arrival on the scene. Mr. Hyland stated that if a man wanted to get hurt, he could put his fingers under the gate over the edge of the die. The court, however, drew Mr. Hyland’s attention to his report of the accident, wherein he made no mention of having tested the machine.
Mr. Joseph ft. Cahl, who at the time was and still is Industrial Inspector at the time of the accident, said that he knew of no accident having occurred on the machine prior to this accident. He stated that immediately after the accident the power was shut off in his presence and that he remained there. He said that the machine remained shut off, which negated the assertion of Mr. Hyland that he had operated it one hundred times after the accident.
Mr. Michael Fastic, presently the Industrial Foreman at the shop, who described the working of the press, said that when the gate is down it takes two seconds for the clutch to engage and trip the solenoid which allows the clutch to engage. There is a magnet controlling the counterweight, which is energized by the going down of the gate, provided the gate goes all the way down. He stated that although the machine could repeat without *934 being energized by the pulling of the handle, such an occurrence would be a remote possibility. He did concede that a short circuit caused by two separate wires coming together could trip the counterweight and cause the press to repeat, and yet that by vibration the 'wires could be restored to their original position and work properly. This, too, would be a remote possibility.
The court feel that the story told by the claimant was straightforward and that through some means or other, the accident did happen. The question is whether it happened through negligence or willfulness on the part of this claimant, or through the negligence of the State or the automatic defection of the State’s machine. I believe that the claimant was alert, was doing his job well and was in no way guilty of contributory negligence. He suffered this injury because of a defect in the machine he operated under the State’s supervision, which defect should have been discovered and remedied at the time the claimant complained to the State’s representative of the defective operation of the machine. I find that the State’s representative did not supervise the machine adequately. Although the claimant is handicapped by the loss of part of his left finger, he apparently is not prevented from performing useful work.
The court awards to the claimant for the personal injuries sustained by him the sum of $2,000.
All motions heretofore made by the State on which decision wás reserved are hereby denied.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.